## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| BARRY W. BAYES and TAMMY L. BAYES, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 3:25-cv-841 |
| | : | |
| EQUIFAX INFORMATION  SERVICES, LLC, | : | |
| EXPERIAN INFORMATION, SOLUTIONS, INC. | : | |
| and TRANS UNION, LLC | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## COMPLAINT

Plaintiffs Barry Bayes and Tammy Bayes file this Complaint against Defendants Equifax Information Services, LLC; Experian Information Solutions, Inc.; and Trans Union, LLC, (collectively, "Defendants"). In support, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.     Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2.     The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3.      Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a report finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4.      Here, the Defendants reported that Plaintiffs owed more than $60,000 on a Truist home equity line of credit stemming from fraudulent transactions that Plaintiffs did not authorize.

5.      When Plaintiffs disputed the reporting of that account with Equifax, Experian, and Trans Union, the Defendants each failed to adequately investigate their disputes or remove the inaccurate information from their credit report.  Worse, each time Plaintiffs disputed the reporting, Defendants updated the account to report it as more and more delinquent, causing further harm to his credit.

6.      As a result, Plaintiffs allege claims against Equifax, Experian, and Trans Union for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

accuracy of their credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate their disputes.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this District and Division, and most of the events giving rise to Plaintiffs' claims occurred here.

## PARTIES

9.      Plaintiff Barry W. Bayes is a natural person residing in this District and Division.

10.     Plaintiff Tammy L. Bayes is a natural person residing in this District and Division

11.     Defendant Equifax is a foreign limited liability company with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12.     Defendant Experian is a foreign corporation with a principal place of business in Orange, California. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13.     Defendant Trans Union is a foreign limited liability company with a principal place of business in Chicago, Illinois. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

1.      Plaintiffs are a married couple who reside in Prince George County.

2.      Plaintiff Barry Bayes retired from a career in law enforcement in Hopewell, Virginia.

3.      He was forced to retire due to medical issues, including a heart condition.

4.      In 1999, Plaintiff Tammy Bayes was diagnosed with multiple sclerosis, a medical condition that she manages to the best of her ability.

5. Because of her medical condition, Plaintiff Tammy Bayes has not worked since November 2020.

6. Plaintiffs live on a modest income, consisting primarily of monthly payments from Plaintiff Barry Bayes' pension with the Hopewell Police Department.

7. In July 2024, Plaintiffs' Truist home equity line of credit had a balance of about $24,317.

8. Plaintiffs had incurred that modest balance over several years to help cover various life expenses at times when money was tight.

9. Despite Plaintiffs' frugality, that balance ballooned to more than $60,000 after an unknown fraudster borrowed money against the line of credit.

10. Upon information and belief, the fraudster hacked into Plaintiffs' online Truist banking account and performed the credit transactions remotely.

11. Plaintiffs did not authorize those transactions and had given no one else permission to make credit transactions from their online account.

12. Plaintiffs also did not benefit from the credit transactions in any way. To be clear, the money is gone.

13. Upon discovering the fraud, Plaintiffs immediately reported it to Truist.

14. Plaintiffs continued to make payments on the balance comprised of authorized transactions, which was the approximately $24,000 balance that Plaintiffs owed before the fraud.

15. Despite Plaintiffs' efforts to pay down the portion of the debt that they legitimately owed, Truist eventually considered Plaintiffs delinquent, assessed fees and interest on the fraudulent part of the home equity line of credit balance, and closed the account for the purported delinquency.

16.    Plaintiffs later learned that each month—even in the midst of their ongoing disputes to Truist—Truist was reporting their account with a balance exceeding $64,000.

17.    Plaintiffs also learned that Truist was reporting them as past due and attempting to foreclose the home where Mr. Bayes has lived for 38 years.

18.    Each of the Defendants included this inaccurate reporting on Plaintiffs' credit reports.

19.    That reporting was inaccurate because Plaintiffs did not incur the bulk of the charges reflected by the account balance, and Plaintiffs had been making monthly payments on the charges that Plaintiffs themselves authorized.

20.    The credit reporting should have reflected a balance of approximately $24,000, and on-time payments for each month.

21.    Plaintiffs disputed the inaccurate credit reporting to the Defendants on or about November 15, 2024. Plaintiffs' dispute letters made clear that they did not owe the bulk of the reported balance because they had been the victim of fraud and explained that they were not delinquent on the account.

22.    Upon information and belief, the Defendants forwarded notification of Plaintiffs' disputes to Truist.

23.    Despite Plaintiffs' disputes and its own internal notes showing that the Plaintiffs had repeatedly complained about the fraud, Truist verified its reporting as accurate.

24.    Equifax, Experian, and Trans Union, meanwhile, relied entirely on Truist's investigation results and neglected to conduct any other investigation into Plaintiffs' disputes.

25.    As a result, the inaccurate information about the Truist account remained on Plaintiff's Equifax, Experian, and Trans Union reports.

26.    Plaintiffs sent follow-up disputes to each of the Defendants in January 2025.

27.    Plaintiffs' second dispute letters again made clear that the bulk of the home equity line of credit balance was not incurred by Plaintiffs, with their permission, or for their benefit. They asked that the balance for the account be updated to remove the fraudulent charges and that any negative credit reporting be removed.

28.    Upon information and belief, the Defendants forwarded notification of Plaintiffs' second disputes to Truist.

29.    Despite Plaintiffs' second disputes, Truist verified its reporting as accurate.

30.    Again, Defendants relied entirely on Truist's dispute response and did not conduct any independent investigation of their own to determine whether their reporting was accurate.

31.    As a result, the inaccurate information remained on Plaintiffs' credit reports.

32.    Plaintiffs then disputed the account with the Defendants a third time in February 2025.

33.    As before, Plaintiffs' dispute letters made clear that the bulk of the home equity line of credit balance was not incurred by Plaintiffs, with their permission, or for their benefit. They also attached a letter from Truist stating that the account had been blocked due to suspicious and unusual activity,

34.    Upon information and belief, the Defendants forwarded notification of Plaintiffs' third disputes to Truist.

35.    After a cursory review, Truist verified its reporting as accurate again.

36.    Again, Defendants relied entirely on Truist's dispute response and conducted no independent investigation of their own to determine whether the Plaintiffs were, in fact, the victim of fraud.

37.    As a result, the inaccurate information remained on Plaintiffs' credit reports.

38.    Plaintiffs submitted a fourth set of dispute letters to the Defendants in April 2025.

39.    Once more, Plaintiffs' fourth dispute letters made clear that the bulk of the home equity line of credit balance was not incurred by Plaintiffs, with their permission, or for their benefit. They asked that the Defendants update the account to reflect the correct balance and to remove the derogatory reporting.

40.    Upon information and belief, the Defendants forwarded notification of Plaintiffs' fourth disputes to Truist.

41.    After a cursory review, Truist verified its reporting as accurate for a fourth time.

42.    And for a fourth time, the Defendants relied entirely on Truist's investigation results and neglected to conduct any other investigation into Plaintiff's disputes.

43.    As a result, the inaccurate information about the Truist account remained on Plaintiff's Equifax, Experian, and Trans Union reports.

44.    As a result of Defendants' conduct, Plaintiffs have suffered significant actual damages, including numerous credit denials, reduced credit score, embarrassment, humiliation, and emotional distress.

### *Defendants' FCRA Violations Were Willful*

45.    As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute.");

*Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

46. Upon information and belief and consistent with its standard policies and procedures, Equifax, Experian, and Trans Union automatically generated its "investigation" results once Truist verified the status of the account. Equifax, Experian, and Trans Union did not take any extra actions to verify the accuracy of the information that Truist provided them.

47. Instead, Equifax, Experian, and Trans Union blindly accepted Truist's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

48. Equifax, Experian, and Trans Union continue the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

49. Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

50. As a result, at all times relevant to this Complaint, Equifax's, Experian's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

## COUNT ONE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
### (EQUIFAX, EXPERIAN, and TRANS UNION)

51.    Plaintiffs incorporate the preceding allegations.

52.    Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit reports and credit files that they published and maintained.

53.    Because of Equifax's, Experian's, and Trans Union's conduct, Plaintiffs suffered actual damages, including, without limitation, credit denials, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

54.    Equifax's, Experian's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiffs for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

55.    In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiffs to a recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
### VIOLATION OF FCRA, 15 U.S.C. § 1681i
### (EQUIFAX, EXPERIAN, and TRANS UNION)

56.    Plaintiffs incorporate the preceding allegations.

57.    Equifax, Experian, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Truist with all the relevant information about Plaintiffs' disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiffs in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiffs' credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

58.     Because of Equifax's, Experian's, and Trans Union's violations of §1681i, Plaintiffs suffered actual damages, including, but not limited to, credit denials, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

59.     Equifax's, Experian's, and Trans Union's violations of § 1681i were willful, rendering them liable to Plaintiffs for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

60.     In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Plaintiffs to a recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs demand judgment for actual, statutory, and punitive damages against Defendants as pleaded above; their attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

Respectfully submitted,
**BARRY W. BAYES AND TAMMY L. BAYES**

*/s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB # 93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiffs*